UNITED STATES DISTRICT COURT
FOR THE
DISTRICT OF MASSACHUSETTS

JOSEPH PETER SCHMITT, PRO SE, )
         PLAINTIFF,            )
                               )
VS.                            )   C.A. No. 05
                               )
MA. DEPARTMENT OF CORRECTION, ET AL, ) Referred to MJ JGDein
         DEFENDANTS.           )

## COMPLAINT

### Introduction

This is an action for Declaratory Judgment pursuant to 28 U.S.C. § 220 and for damages pursuant to 42 U.S.C. § 1983, brought by the pro se plaintiff, Joseph Peter Schmitt. Plaintiff alleges that defendants individually and collectively violated his due process right, privacy rights, first amendment rights, and other state and federal constitutional rights and laws.

### PARTIES

Plaintiff, Joseph Peter Schmitt is a temprary civil detainee at the Treatment Center in Bridgewater. He is commencing this action as a pro se litigant.

Defendant number one is The Department of Correction. This defendant has the mailing address of 50 Maple Street, Suite 3, Milford, Massachusetts 01757-3698. This defendant is sued in its official capacity.

Defendant number two is Michael T. Maloney. This defendant was the Commissioner for the Department of Correction during the time of the complaints issues. This Defendant's address is unknown at

02071-0100. He is sued in both his official and individual capacity.

Defendant number nine is Stephen (Steven) Kennedy who was an Investigator with the rank of sergeant at MCI-Cedar Junction at the time of the complaints issues. He has the mailing address of P.O. Box 100 South Walpole MA. 02071-0100. He is sued in both his official and individual capacity.

Defendant number ten is Kathleen Dennehy who is the acting Commissioner for the Department of Correction at times relevent to the complaints issues. She is sued in both her official and individual capacity.

## FACTS

1)   Plaintiff began serving a four to eight year prison term for the Commonwealth on or about September 14,1994 and completed said sentence or August 11,2002.

2)   Plaintiff completed his prison term at MCI-Cedar Junction and served approximately the last eighteen months of his sentence at this facility.

3)   Prior to the Plaintiff's release date he was subjected to having his personal incoming and outgoing mail opened, read, and even photocopied by the defendants.

4)   Prior to the Plaintiff's release date he was subjected to many searches of his property in which he possessed in his housing assignment cell and had personal property confiscated without his knowledge and without being given any notice or receipt from the defendants. Property confiscated was material such as personal letters received through the mail and processed through the facilities

mailroom.

5) Prior to Plaintiff's release he submitted written requests for the return of personal property confiscated by the defendants for which he had not received any disciplinary reports. These requests were ignored for the most part and some received a reply informing me that the material was being held pending possible disciplinary action and later he was informed that the material was being held pending court action.

6) Upon Plaintiff's release from his prison sentence at MCI-Cedar Junction he was deprived of his right to take his person property with him which he had neatly packed in his housing unit cell. This personal property consisted of, but not limited to, personal letters, photos, paper work, and legal material along with clothes.

7) Plaintiff was under the assumption that he was being released to county jail officials at Billerica county jail to serve his six month jail sentence but in fact he was transferred to the Treatment Center in Bridgewater Massachusetts pursuant to M.G.L. c.123A.

8) Plaintiff made several requests to have his confiscated property returned to him after he had completed his prison term and transfered out of the commonwealth's prison system facility, MCI-Cedar Junction, and was denied said property by defendants. Defendants alleged that property was being held pending possible disciplinary action even though plaintiff was nolonger subject to such prison action. Also at later dates defendants alleged property was being held as evidence in his SDP Civil Trial pursuant to M.G.L. c.123A.

9) Plaintiff filed grievances regarding the illegal confiscation

of his personal property and was denied.

10)  Plaintiff has not received any formal disciplinary action due to any of the materials confiscated by defendants which is relevent to this action.

11)  None of the material confiscated by defendants possed any security threat to the facility nor did it violate any DOC/CMR policy or rule.


## DISCUSSION

12)  Defendants have confiscated personal property from Plaintiff without justified cause or lawful authorization of law.

13)  Defendants have violated M.G.L., Massachusetts Declaration of Rights, CMR Policy, and the U.S. Constitution as well as Department Of Correction Policy which is promulgated by M.G.L.

14)  Defendants have violated the Plaintiff's Due Process Right and and other rights by depriving him of his personal property and by confiscating said property in the fashion they have done so.

15)  Defendants at MCI-Cedar Junction routinely violated plaintiff's Federal and State rights under the guise of investigation or threat to the facility's security.

16)  Plaintiff, although he was a prisoner of the Commonwealth, had the absolute right to expect the defendants to follow their own Rules and Regulations and CMRs when it involves the confiscation of his personal property and mail.


## LEGAL ARGUMENT

17)  Defendants actions have deprived Plaintiff complete access to

his personal property in which he was allowed to possess according to the Commonwealth's Department of Correction's own Rules and Regulations. Defendants actions directly violate Plaintiff's Due Process Right guaranteed under both state and Federal statutes and laws and constitutional amendments. Plaintiff as a Prisoner has a Due Process right to hearing before he may be deprived of liberty interest on basis of misbehavior report. See BODDIE vs SCHNIEDER, 105 F3d 857 (2nd Cir. 1997).

18) Defendants had knowledge that Plaintiff was being petitioned pursuant to M.G.L.c. 123A and purposely conducted searches of Plaintiff's personal property and mail to obtain evidence for the District Attorney to use against Plaintiff which is a violation of Plaintiff's Fourth Amendment. See US vs COHEN, 796 F2d 20 (2nd Cir. 1986).

19) The Constitution protect individuals against invasion of their privacy by the government. See RIMIE vs CITY OF HEDWIG VILAGE, TEXAS, 765 F2d 490 (5th Cir. 1985). Also see WHALEN vs ROE, 429 US 589, 51 LEd2d 64, 97 SCt 869 (1977). Defendants had no legitimate govenment interest in conducting repeated searches of my personal property and eventually confiscating items of said property such as photos of nephews, nieces, friends, and personal letters and other non threatening written documents.

20) Plaintiff property was in fact searched prior to his receiving it in his assigned prison cell. Said property was searched countless times due to normal and additional searches. At no time did plaintiff attempt to share his personal property with another inmate. His

prison cell was secured at all times and due to the level of security Plaintiff was housed under there was no chance at all of his cell or property being tampered with or viewed by another inmate. The housing unit cell was secured from all intruders except the defendants. As such Plaintiff could clearly expect that activities which take place within the sanctity of his cell (home) merits most exacting Fourth Amendment protection. See US vs CUSUMANO, 67 F3d 1497 (10th Cir. 1995).

21) Unlawful search can never be justified by its fruits. See PARKHURST vs TRAPP, 77 F3d 707 (3rd Cir. 1996). It is very clear that defendants actively began collecting material intended to be used against the Plaintiff in the anticipated M.G.L. c. 123A SDP Civil Committment Trial twelve to eighteen months prior to Plaintiff's release date. Close review will clearly show that an over zealous attitude prevailed over the Plaintiff's State and Federal rights.

22) Plaintiff was subject to unreasonable searches and confiscation of his personal property by the defendants simply for the intent of uncovering some shred of evidence to incriminate Plaintiff in any criminal act. This is a violation of PLaintiff's Fourth Amendment. See US vs KIMBROUGH, 69 F3d 723 (5th Cir. 1995). Also see US vs LAYNE, 43 F3d 127 (5th Cir. 1995).

23) Defendants confiscated Plaintiff's personal mail, both incoming and outgoing, as well as mail that he already possessed for a period of time after being processed into the facility by the mailroom officials. Such mail contained letters, photos, and other such personal materials that do not constitute a violation of the facility or Department of Correction mail policy. The Plaintiff was entitled to

written notice that his mail had been confiscated and or rejected. See <u>PROCUNIER vs MARTINEZ, 416 US 396, 40 LEd2d 224, 94 SCt 1800 (1974.</u>

24) Defendants confiscated Plaintiff's outgoing mail which clearly violates the intended recipient's rights as the Plaintiff's rights and the intended recipients rights are inextricably meshed when mail is at issue. See <u>HALL vs CURRAN, 818 F2d 1040 (2nd Cir. 1987).</u>

25) Prison inmates have a recognized First Amendment interest in receiving mail. And, prisoners constitutional right to send and receive mail may be restricted only for legitimate penological interests only. See <u>PHELPS vs US FEDERAL GOVERNMENT, 15 F3d 735 (8th Cir. 1994)</u> also see <u>GRIFFIN vs LOMBARDI, 946 F2d 604 (8th Cir. 1991).</u>

26) Prisoners do not forfeit their First Amendment rights to use the mails. And, in the context of the First Amendment and prison mail, "censorship" means altering or withholding delivery of a particular letter. See <u>BIEREGU vs RENO, 59 F3d 1445 (3rd Cir. 1995).</u>

27) Inmate is entitled to prior notice or fair warning of proscribed conduct before severe sanctions may be imposed. See <u>REEVES vs PETTICOX, 19 F3d 1060 (5th Cir. 1994).</u>

28) The Supreme Court has held unconstitutional the censorship of prisoner mail when prison officials censor simply by indulging their "personal prejudices and opinions" while purporting to apply constitutional standard. Other Courts have agreed that when reviewing officials merely "apply their own personal prejudices for mail censorship," they deprive prisoners of Constitutional Protection. See <u>PROCUNIER vs MARTINEZ, 416 US at 415, 94 SCt at 1812.</u> Also

see TRAPNELL vs RIGGSBY, 622 F.2d 290, 293 (7th Cir. 1980). Also see ACCORD PEPPERLING vs CRIST, 678 F.2d 787, 790 (9th Cir. 1982). (Prison officials have no legitimate governmental interest in imposing their own standards of sexual morality on the inmates.")

29) "...Prisoners are not wholly striped of their Constitutional Protected Rights..." See Wolff vs MCDONNELL, 94 S.Ct 2963, 2974, 41 L.Ed 2d 935 (1974).

30) An inmate has the right to expect prison officials to follow its own policies and regulations. See PAYNE vs BLOCK, 714 Fnd 1510 (11th Cir. 1984).

31) Prison walls are not a barrier seperating inmates from the protections of the Constitution. See GIANO vs SENKOWSKI, %$ F3d 1050 (2nd Cir. 1995).


CONCLUSION

32) Defendants, all part of the law enforcement field, clearly have a working knowlege of basic proceedures of law and civil rights. It would be illogical to assume that defendants William Grossi, Carter Thomas, Jeffrey Smith, Patrick Mulvey and Stephen Kennedy are so ignorant of the law that they could hold the position they do in the law enforcement field without knowing basic rights of the individuals they are in contact with during the course of their duties. They were actively taking part in an investigation against the Plaintiff and in doing so are liable by law to make sure no law is broken. This is not a one way fact. They surely have the right to investigate the Plaintiff for legitimate reasons and in doing so are obligated to follow the Commonwealth's laws and Department of Correction Rules

and Policies. The above named defendants failed to do this and due to their collective and individual negligence Plaintiff's Guaranteed State and Federal Rights were violated without justified cause. Ignorance of the law is not a justifiable cause.

33) Defendand David Nolan prior to his position as MCI-Cedar Junction Acting Superintendent was the authority for the Department of Corrections Rules, Regulations and Policies which are promulgated by M.G.L.. This defendant was informed of the ongoing issues and refused to correct the wrong doing and therefore is guilty of deliberate indifferance of the illegal actions caused against the PLaintiff by the above named defendants who are directly under his authority. This defendant surely has a higher level of working knowledge regarding the rights of inmates and the laws involved in the daily functioning of a prison such as MCI-Cedar Junction.

34) Defendant Peter Allen held the position of MCI-Cedar Junction Superintendant and had complete authority over all defendants named in §32 per Rules and Regulations and laws of the Department of Correction and Commonwealth. This defendant made his educated choice to disregard the Plaintiffs countless letters of notice and complaint and in doing so choose to deliberately disregard Plaintiff's Rights which caused Plaintiff to suffer unnecessarily.

35) Defendants Michael T. Maloney, Kathleen Dennehy and Massachusetts Department Of Correction were and are in the position to have made the illegal abuse stop. Furthermore they were and are in the position to have each and ever issue brought up by the Plaintiff investigated on legal level through the Department of Correction Legal Division. It is not a far reach to expect the named defendants to instruct

the legal division to investigate my claims, notices and complaints. None of the named defendants took this small step to ensure the well being of Plaintiff rights and therefore they are guilty of gross negligence and deliberate indifference to Plaintiff's suffering.

36) Plaintiff was being investigated regardless of the level of need this was based on the investigation was conducted with clear bias and prejudice. Plaintiff was subjected to numerous disciplinary reports which involve allegations of Plaintiff making threats against the named defendants children, person's, and or unnamed Department of Correction employees. The fact that Plaintiff would so suddenly take this course of behaviour is highly questionable when one with a clear and unbiased view takes into consideration that these Disciplinary Reports coincide with the defendants knowledge and active steps being taken to supply the Worcester District Attorney's Office with evidence to use in order to have Plaintiff civilly committed as a Sexually Dangerous Person under M.G.L. c. 123A.

37) Plaintiff is filing other actions in this court against named and unnamed defendants of this immediate action which will show that defendant Carter Thomas has taken prejudice, bias, illegal and abusive action against the Plaintiff and was supported by his fellow officers of the Department of Correction at MCI-Cedar Junction.

## JURISDICTION

38) This Court has jurisdiction of this case pursuant to 28 U.S.C. 1331, and the Constitution of the United States, et. seq.

## CLAIMS FOR RELIEF

39) The actions of the defendants violated the Plaintiff's Due Process Rights as established by 103-CMR-481 et. seq., which are the Mail regulations for the Department of Correction, and 103-CMR-430 et. seq., which are the Disciplinary regulations for the Department of Correction, and 103-CMR-403 et. seq., which are the Property regulations for the Department of Correction. These regulations are promulgated pursuant to the state administrative procedure act and have the force of law.

40) The actions of the defendants violated the Plaintiff's Due Process Rights as guaranteed by the Massachusetts Declaration of Rights.

41) The actions of the defendants violated the Plaintiff's Due Process Rights as guaranteed by the United States Constitution.

42) The actions of the defendants violated the Plaintiff's Freedom of Speech Rights as guaranteed by the Massachusetts Declaration of Rights.

43) The actions of the defendants violated the Plaintiff's Freedom of Speech Rights as guaranteed by the United States Constitution.

44) The Actions of the defendants violated the Plaintiff's protection from invasion of privacy as guaranteed by the Massachusetts Declaration of Rights.

45) The actions of the defendants violated the Plaintiff's protection from invasion of privacy as guaranteed by the United States Constitution Fourth Amendment.

46) The actions of the defendants, who are state officials acting under color of law, violated 42 U.S.C.A. § 1983 and 18 U.S.C.A. § 242.

(13)

## PRAYERS FOR RELIEF

47) WHEREFORE, Plaintiff requests this Honorable Court:

48) Declare that the actions of the defendants violated the laws of the Commonwealth of Massachusetts; the Massachusetts Declaration of Rights; and, the United States Of America Constitution.

49) Enjoin defendants to expunge the above related materials and all records created by said confiscated materials from Plaintiff's official and unofficial records and return all material to Plaintiff.

50) Grant monetary damages to Plaintiff.

51) Grant punitive damages to Plaintiff.

52) Grant damages to the Plaintiff pursuant to 42 U.S.C.A. §1982 and the Massachusetts Declaration of Rights.

53) Grant Plaintiff all cost of this action and reasonable attorey fees as a pro se litigant.

54) Take action against defendants pursuant to 18 U.S.C.A. § 242.

55) Grant such other and further relief as this Honorable Court deems just and proper.

Dated: February 16, 2005

Respectfully submitted,

Joseph Peter Schmitt, pro se
MA. Treatment Center
30 Administration Road
Bridgewater, MA. 02324-3230

Cc: JPS FILE