UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

CIVIL ACTION NO. 05-cv-10573-RWZ

JOSEPH SCHMITT,
          Plaintiff,

          v.

MASSACHUSETTS DEPARTMENT OF
CORRECTION, et al.,

          Defendants.

**DEFENDANT DEPARTMENT OF CORRECTION AND DENNEHY'S
RENEWED MOTION TO DISMISS**

In its Order dated February 5, 2007, (docket number 45), this Court narrowed the

issues in plaintiff's Complaint and dismissed the Complaint against all defendants except

the Department of Correction and Commissioner of Correction Kathleen Dennehy.  The

Court also determined that Schmitt's claim for damages regarding personal property was

not moot if he has not received personal property to which he is entitled.

Schmitt was  ordered plaintiff to file an inventory of the "**non-contraband**

personal property that is implicated in this case."  Upon receipt of this inventory, it is

obvious that Schmitt has blatantly disregarded this Court's clear directive.  See docket

entry #48.  Because Schmitt failed to properly comply with the Court's Order and

because the Complaint against both remaining defendants fails to state a claim upon

which relief may be granted, pursuant to Fed. R. Civ. P. 12(b)(6), defendants Department

of Correction and Kathleen Dennehy move to dismiss the Complaint against them.

**STATEMENT OF FACTS**

Plaintiff, Joseph Schmitt, ("Schmitt"), pro se, is civilly committed at the

Massachusetts Treatment Center in Bridgewater, Massachusetts.  Schmitt's Complaint

claims that the defendants "have confiscated personal property from plaintiff without

justified cause or lawful authorization of law." The alleged events complained of by

Schmitt occurred in and around August 2002. Plaintiff was released from MCI Cedar

Junction in August 2002. The only remaining defendants are the Massachusetts

Department of Correction ("Department"), and current DOC Commissioner Kathleen

Dennehy. See February 5, 2007 Order.

For the reasons set forth herein, defendants Department of Correction and

Kathleen Dennehy request dismissal of the remainder of Schmitt's Complaint.

## **ARGUMENT**

A motion to dismiss the complaint must be construed in the light most favorable

to plaintiff and its allegations taken as true. Hugh v. Rowe, 449 U.S. 5, 10 (1980). A

complaint must fail if it appears beyond a doubt that plaintiff can prove no set of facts in

support of his claim which would be entitled to relief. Conley v. Gibson, 355 U.S. 41,

45-46 (1957). To withstand a motion to dismiss, plaintiff must "set forth minimal facts,

not subjective characterizations, as to who did what to whom and why." Dewey v.

University of New Hampshire, 694 F.2d 1, 3 (1st Cir. 1982), cert. denied 461 U.S. 944

(1983). Although the threshold for stating a claim may be low, it is real. Gooley v.

Mobil Oil Corp., 851 F. 2d 513, 514 (1st Cir. 1988). Because Schmitt has not stated a

valid claim under federal or state law or any constitutional claim against the remaining

two defendants, his Complaint must be dismissed.

## I.    SCHMITT FAILED TO PROPERLY COMPLY WITH THIS COURT'S ORDER.

Schmitt should be sanctioned with the dismissal of his Complaint for his failure to properly comply with the Court's February 5, 2007 Order regarding his property inventory. The Court clearly stated that the list should include "**non-contraband** personal property." <u>See</u> docket number 45. (emphasis added.) Schmitt filed his "Plaintiff's Response to Court's February 5, 2007 Order to File an Inventory of Property Implicated in Case" on February 12, 2007. <u>See</u> docket number 48.

However, among the items listed by Schmitt as confiscated are, "40 copyrighted adult themed transcripts," "various fictional stories of erotic nature between adult males and male youths, " and "various pages confiscated by Special Investigator Stephen Kennedy during or about December 2001." These items are considered contraband at the Massachusetts Treatment Center where plaintiff is a civilly committed sex offender. Schmitt is aware that these items are contraband and he has filed motions in other lawsuits seeking the return of this material. The Department's position regarding the return of these items was set forth in <u>Schmitt v. Smith</u> and <u>Schmitt v. Mulvey</u>, 04-cv-10451 and 04-10717. A copy of Schmitt's Motion for Court Order and the Department's Response is attached hereto as Exhibit 1.

The master property inventory form, attached hereto as Exhibit 2, is a list of Schmitt's property as of March 23, 2007. Page three of the form shows that the Massachusetts Treatment Center is holding various items for disposal because they are considered contraband (child pornography and sexually explicit materials.) The property inventory submitted by Schmitt is so vague that it is impossible to ascertain who allegedly took the items, when they were taken, whether contraband notices were issued, and why they were taken (if at all.) As such, it is impossible for the Department to

3

respond to this list.  For example, Schmitt lists "one pair of sneakers."  However, the master property list shows that he is currently in possession of two pairs of sneakers. Exhibit 2, page 1.

Although Schmitt claims to have filed grievances regarding the missing property, he fails to include copies.  He also fails to provide any contraband notices or the letters allegedly "informing me that the material was being held pending possible disciplinary action . . ."  Complaint, paragraph 5.  Finally, as set forth below, to the extent that Schmitt claims that these items were allegedly confiscated at MCI Cedar Junction prior to February 2002, the Complaint is time barred by the applicable statute of limitations.

In conclusion, this Court should sanction Schmitt with dismissal of the Complaint for his deliberate disregard of the clear instructions set forth in the February 5, 2007 Order to list non-contraband property items.

## II.    SCHMITT HAS MISSED THE STATUTE OF LIMITATIONS.

Schmitt complains that "prior to his release," from MCI Cedar Junction, certain items of personal property were confiscated.  Complaint, paragraph 4.  Schmitt has resided at the Massachusetts Treatment Center since August 11, 2002.  As such, all claims by Schmitt which relate to personal property allegedly confiscated at MCI Cedar Junction more than three years before February 18, 2005 (when the complaint was filed) are barred by the statute of limitations and must be dismissed.  For example, Schmitt's property inventory lists "various papers confiscated by Special Investigator Stephen Kennedy during or about December 2001."  These and any other items allegedly confiscated prior to February 2002 may not be the subject of this litigation as these claims are time barred.

"Section 1983 creates a private right of action for redressing abridgments or deprivations of federal constitutional rights. The resultant liability is akin to tort liability." McIntosh v. Antonino, 71 F.3d 29, 33 (1st Cir. 1995). Section 1983 does not contain a built-in statute of limitations. Rather, section 1983 claims are governed by the most closely analogous statute of limitations governing personal injury claims. Wilson v. Garcia, 471 U.S. 261, 263 n.3 (1985); Benitez-Pons v. Commonwealth of Puerto Rico, 136 F.3d 54, 59 (1st Cir. 1988). Massachusetts prescribes a three-year limitations period for civil rights claims. G.L. c. 260, § 5B. There is a three-year limitation period for personal injury actions. See G.L. c. 260, § 2A; G.L. c. 258, § 4. McIntosh v. Antonino, 71 F.3d at 34. The tolling of the statute of limitations is also governed by state law. Benitez-Pons v. Commonwealth of Puerto Rico, 136 F.3d at 59.

To the extent that Schmitt's Complaint refers to alleged actions that allegedly occurred before February 2002, the statute of limitations has expired and the Complaint must be dismissed.

## III.    COMMISSIONER DENNEHY IS ENTITLED TO DISMISSAL OF THE CLAIMS UNDER § 1983 IN THE ABSENCE OF SUPERVISORY LIABILITY.

Schmitt's Complaint fails to make any allegations regarding any specific conduct by Commissioner Dennehy regarding his property.   As such, the complaint against her must be dismissed.

A plaintiff asserting a claim of constitutional right violations under § 1983 "must allege that some person has deprived him of a federal right." Gomez v. Toledo, 446 U.S. 635, 640 (1988) (emphasis added).  "In order to state a claim under §1983 the claimant must allege facts showing that the conduct complained of was committed by one acting under color of state law." Burgess v. City of Houston, 718 F.2d 151, 154 (5th Cir. 1983).

Dismissal is warranted where the complaint fails to present any facts which indicate the specific actions alleged to have been taken by the defendants.  Kador Corporation v. Milbury, 549 F.2d 230 (1st Cir. 1977).  In Kador, the First Circuit affirmed the lower court's dismissal of the complaint for failure to "allege with at least some degree of particularity overt acts which defendants engaged in which were reasonably related to the promotion of the claimed conspiracy."  Id at 233.  See also Earle v. Benoit, 850 F.2d 836, 844 (1st Cir. 1988); Dewey v. University of New Hampshire, 694 F.2d 1, 3 (1st. Cir. 1983); Glaros v. Peese, 628 F.2d 679, 683 (1st Cir. 1980); Cuddy v. City of Boston, 765 F. Supp. 775, 778 (D. Mass. 1991).

In the instant case, Schmitt's complaint is void of any specific actions taken by Commissioner Dennehy which would support the claimed constitutional violations. Nor can this defendant be held liable in her supervisory capacities for the alleged civil rights violations, as it is well settled that the liability of a public employer or supervising official for civil rights violations cannot be predicated on a theory of respondeat superior. See Polk County v. Dodson, 454 U.S. 312, 326 (1981); Monell v. Department of Social Services, 436 U.S. 658, 694 (1978); Hathaway v. Stone, 687 F. Supp. 708, 711 (D. Mass. 1988) (no supervisory liability under G.L. c. 12, §11 I for failure to train, discipline or supervise police officers).

Only under very narrow circumstances may a supervisor be held responsible for the acts of a subordinate.  There must either be some participation or acquiescence by the supervising official in the alleged constitutional deprivations, Delaney v. Dias, 415 F. Supp. 1351, 1354 (D. Mass. 1976), or an "affirmative link" between the conduct of the supervisor and that of the employee.  Voutour v. Vitale, 761 F.2d 812, 880 (1st Cir. 1985), cert. denied, 474 U.S. 1100 (1986); O'Malley v. Sheriff of Worcester County, 415 Mass. 132, 142-143 (1993); Martino v. Hogan,  37 Mass. App. 710, 719-20 (1994), rev. denied, 419 Mass. 1106 (1995).  Further, these acts or omissions must constitute more than mere negligence, but must amount to a reckless or callous indifference to the

constitutional rights of others.  Daniels v. Williams, 474 U.S. 327 (1986); Germany v. Vance, 868 F.2d 9, 17-18 (1st Cir. 1989).

No affirmative link between Commissioner Dennehy and the claimed violations has been shown.  Defendant Dennehy was not even appointed Commissioner of Correction until March 16, 2004, long after Schmitt left MCI Cedar Junction.  She was Acting Commissioner of Correction as of December 1, 2003.   As such, Schmitt has failed to establish any personal involvement by this defendant in her individual capacity, in the alleged violation of his civil rights under § 1983.  Since Schmitt seeks to hold Commissioner Dennehy liable solely as a supervisory official, she is entitled to the dismissal of the civil rights claim.

## IV.    THE DEPARTMENT IS NOT A "PERSON" WITHIN THE MEANING OF 42 U.S.C. § 1983.

Schmitt names the Department of Correction as a defendant.  It is well-established law, however, that a state and its agencies are not "persons" within the meaning of 42 U.S.C. § 1983.  Will v. Michigan Dep't of State Police, 491 U.S. 58 (1989); Pennhurst State School and Hosp. v. Halderman, 465 U.S. 89, 100 (1984); Woodbridge v. Worcester State Hosp., 384 Mass. 38, 44-45 n.7 (1981).  Accordingly, since Section 1983 is not available against the Department, to the extent it is being treated as a defendant, and that Schmitt seeks relief under Section 1983, his complaint must be dismissed.

## CONCLUSION

For the foregoing reasons, defendants request that this Court dismiss Schmitt's

Complaint in its entirety.


Dated: March 23, 2007                    Respectfully submitted,

                                         NANCY ANKERS WHITE
                                         Special Assistant Attorney General

                                         /s/ Jody T. Adams
                                         _____

                                         Jody T. Adams, Counsel
                                         BBO No. 633795
                                         Department of Correction
                                         Legal Division
                                         70 Franklin Street, Suite 600
                                         Boston, MA 02110-1300
                                         (617) 727-3300 x169

## CERTIFICATE OF SERVICE

        I hereby certify that on this date a true copy of the above document was served on
plaintiff, pro se, via first class mail.

                                         /s/ Jody T. Adams
Dated: 3/23/2007                         _____

                                         Jody T. Adams, Counsel

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

Joseph P. Schmitt,
          Plaintiff,

v.

Jeffrey Smith, et al.,
AND
Patrick Mulvey, et al.,
          Defendants.

FILED
IN CLERKS OFFICE

Civil Action No. 05-10573-RWZ
Civil Action No. 04-10717-RWZ

2006 APR 12 P 3:04

U.S. DISTRICT COURT
DISTRICT OF MASS

### MOTION FOR COURT ORDER

Now comes the pro se Plaintiff, Joseph P. Schmitt, and moves this Honorable Court for an order to the Defendants and/or their Counsel/employer to immediately return the evidence illegally censored, confiscated and subject of disciplinary action. Specifically Plaintiff's story/letter entitled A Week End In Paradise and Rain Dance. Also all envelopes such letters/stories were originally mailed with.

Plaintiff further moves that this Honorable Court order the Department of Correction to expunge Plaintiff institutional Records of any and all mention of the two disciplinary reports he illegally received due to the above noted stories/letters.

Plaintiff further moves for an order that the department of correction provide a detailed listing of any and all agencies, persons or any others who were caused to receive a copy of the disciplinary reports and stories/letters.

Plaintiff further moves this Honorable Court to order the lower Court, Worcester Superior Court, specifically regarding Civil Action WOCV2002-01529-A, to expunge the above stories/letters from evidence being used against the plaintiff in it MGL 123A Civil Committment Trial as said evidence is clearly illegal and must not be used to prosecute Plaintiff. For this portion of this motion, Plaintiff states that this Honorable Court has authority to take action as requested pusuant to 28-USCA-§2201, 28-USCA-§2202 and/or 28-USCA-§1651. This Honorable Court must not allow the lower court to prosecute Plaintiff using illegally obtained evidence, specifically the noted stories/letters above.

Dated: April 7,2006

Respectfully Filed,

Joseph P. Schmitt, pro se
30 Administration Road
Bridgewater, Massachusetts
02324-3230

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

CIVIL ACTION NO. 04-10451-RWZ
CIVIL ACTION NO. 04-10717-RWZ

JOSEPH SCHMITT,
      Schmitt,
       v.
JEFFREY SMITH, et al.,
Defendants

&

JOSEPH SCHMITT,
      Schmitt,
       v.
PATRICK MULVEY, et al.,
Defendants.

**DEFENDANTS' OPPOSITION TO SCHMITT'S MOTION FOR COURT ORDER AND
MOTION FOR SANCTIONS**

      Defendants in the above-captioned matters hereby oppose plaintiff, Joseph Schmitt's

("Schmitt"), motion for court order (04-10451 Doc. No. 72) and move for sanctions for the

reasons that follow.

      Schmitt seeks the return of the two letters/stories ("stories") that were the subject of the

litigation in the instant cases.  He further moves for expungement of the discipline which he

received as a result of attempting to mail out the stories, an order that the Department provide a

list of anyone who received a copy of the disciplinary reports and stories, and to order the

Worcester Superior Court to expunge the stories from evidence being used against him in the civil

commitment petition.

I.     **THE STORIES WILL NOT BE RETURNED TO SCHMITT BECAUSE THEY
        CONTINUE TO BE HELD AS EVIDENCE PURSUANT TO THE**

**DEPARTMENT'S SEARCH POLICY AND BECAUSE SEXUALLY EXPLICIT MATERIALS ARE PROHIBITED AT THE MASSACHUSETTS TREATMENT CENTER.**

### A.    The Stories Continue To Be Held As Evidence Pursuant To The Department's Search Policy.

The stories continue to be held as evidence pursuant to the Department's Search Policy, which states that "[f]inal disposition of all evidence shall be approved in writing by the director of security. Final disposition of evidence relating solely to a disciplinary or civil matter and not involving any possible criminal prosecution shall be approved in writing by the department's general counsel." 103 DOC 506.11. Accordingly, until such time as approval of the disposition of the evidence is made in writing by the Director of Security and the General Counsel, the stories will be held as evidence by the Department. Given that Schmitt has filed a notice of appeal in these cases, no determination would even be made regarding the disposition of said evidence until the resolution of any appeal. Furthermore, there is no requirement under the Search Policy that a determination be made within a specified time. See 103 DOC 506.11. Notwithstanding this, even if the stories were not being held pursuant 103 DOC 506.11, Schmitt would not be entitled to the return of these stories, because such materials, which involve sexual acts with children, are prohibited at the Massachusetts Treatment Center ("Treatment Center"), as they are contrary to the treatment of sex offenders, as set forth below.

### B.    The Stories Are Prohibited At The Treatment Center.

Schmitt, who is temporarily committed to the Treatment Center pending the disposition of a petition to commit him as a sexually dangerous person, is prohibited from possessing such materials at the Treatment Center. The disciplinary regulations that apply to Treatment Center

2

residents--which have previously been approved by this Court and the First Circuit Court of Appeals--forbid the possession of sexually explicit materials whether in written or pictorial form. A review of the Treatment Center's history is helpful to this analysis.

1.    **The History of the Treatment Center and the Federal Consent Decree Litigation.**

The Treatment Center was previously under dual management. General Laws c. 123A, § 2 mandated that the Department of Mental Health ("DMH") had responsibility for the care, treatment, and rehabilitation of Sexually Dangerous Persons ("SDP's"), with custodial personnel provided by the Department. St. 1959, c. 615, as appearing in G.L. c. 123A, § 2. The United States District Court for the District of Massachusetts previously entered consent decrees governing certain aspects of the operation of the Treatment Center that incorporated this dual management scheme. See King v. Greenblatt ("King I"), 52 F.3d 1, 2-3 (1st Cir.), cert. denied, 516 U.S. 863 (1995). Among other things, the consent decrees mandated that Treatment Center residents "have the least restrictive conditions necessary to achieve the purpose of commitment." Id.; see also King v. Greenblatt ("King II"), 127 F.3d 190, 192 (1st Cir. 1997); King v. Greenblatt, 149 F.3d 9 (1st Cir. 1998) ("King III"); King v. Greenblatt, 53 F. Supp.2d 117, 118-20 (D. Mass. 1999) (detailing changes in conditions at Treatment Center from 1972 to 1992).

"General Laws c. 123A is a comprehensive legislative program designed to identify and treat sexually dangerous persons. The statute was enacted 'with the dual aims of protecting the public against future antisocial behavior by the offender, and of doing all that can be done to rehabilitate him.'" Commonwealth v. Barboza, 387 Mass. 105, 111 (1981), cert. denied, 459 U.S. 1020 (1982) (citations omitted).

On January 14, 1994, the Legislature enacted St. 1993, c. 489, § 2, which amended G.L. c. 123A, § 2 by placing sole authority and responsibility over the Treatment Center with the Department. St. 1993, c. 489, § 2, as appearing in G.L. c. 123A, § 2. See King III, 149 F.3d at 11-12; King, 53 F. Supp.2d at 121.

As a result of this legislative change, in 1994 the Court (Mazzone, J.), began overseeing what ultimately became the final phase of the federal consent decree litigation. In 1994, the Court appointed the law firm of Hale and Dorr to represent forty-nine SDP's who called themselves the "Class of 48 + 1" and alleged a number of violations of their state and federal constitutional rights. King, 53 F. Supp.2d at 121.

The Court reopened another consent decree case concerning the Treatment Center, Harold G. Williams v. Michael Lesiak, U.S.D.C. C.A. No. 72-571-ADM, and consolidated it with Mitchell G. King v. Milton Greenblatt, M.D., U.S.D.C. C.A. No. 72-788-ADM, the case involving the Class of 48 + 1 (together 'the federal consent decree litigation'). King, 53 F. Supp.2d at 121.

Following the enactment of St. 1993, c. 489, § 2, the Commonwealth moved to vacate or in the alternative to modify the consent decrees by substituting the Department for DMH as the agency designated to have primary responsibility and control for the facility. King I, 52 F.3d at 3. The Department submitted to the Court an extensive Management Plan for the administration of the Treatment Center. King II, 127 F.3d at 193. The Management Plan encompassed in detail almost every aspect of life at the Treatment Center including policies, regulations, and rules governing staffing, clinical treatment, educational and vocational treatment, a community access

4

program, behavior management, and resident management operations. Id.; King III, 149 F.3d at

15. The Court permitted the Department to implement its plan and modified the consent decrees

to place responsibility for and control of the Treatment Center in the Department. King II, 127

F.3d at 194.

      The Court, however, did not vacate the consent decrees. King III, 149 F.3d at 16.

Instead, the Court elected to exercise close judicial oversight of the Department's compliance

with the consent decrees. Id. at 122-23; King, 53 F. Supp.2d at 122-23. Additionally, the Court

ordered the Department to submit an amended plan addressing issues raised by the parties. The

Amended Plan was filed on November 29, 1996. King, 53 F. Supp.2d at 122.

      From 1994 to June, 1999, the Court approved, oversaw, and monitored the Department's

assumption of sole control over the Treatment Center, including the Department's expansion of

sex offender treatment services at the Treatment Center to non-civilly committed state prison

inmates ("SPI's"). See, e.g., King, 53 F. Supp.2d at 121-23. Throughout that period, the SDP's

continued to assert that the Department's policies and procedures and its introduction of the SPI's

into the facility "essentially turned the Treatment Center into a prison and fundamentally altered

the therapeutic community." King III, 149 F.3d at 16. They also complained that the

Department's new rules and regulations and the additional SPI population impaired or affected

treatment so as to render it ineffective and in violation of G.L. c. 123A and the consent decrees.

King, 53 F. Supp.2d at 123, 135.

      This final phase of the consent decree litigation culminated in an evidentiary hearing before

the Court in March, 1999. King, 53 F. Supp.2d at 124. At the hearing, SDP's reiterated their

numerous complaints about the Department's operation of the Treatment Center. See King, 53 F. Supp.2d at 129-31, 134-35. After the hearing, the Court terminated the consent decrees. King, 53 F. Supp.2d at 136, 139. In doing so, the Court determined that the SDP's complaints about the Department's policies, procedures, rules, and regulations, as well as their complaints about the presence of the SPI's in the Treatment Center taken as a whole did not render treatment ineffective, did not violate G.L. c. 123A, did not violate the consent decrees, and, by implication, did not violate any state or federal rights. King, 53 F. Supp.2d at 135, 137. See King III, 149 F.3d at 19.

This Court terminated the consent decrees in June, 1999. See King, 53 F. Supp.2d at 117. In September, 1999, the Legislature amended G.L. c. 123A and once again provided for the civil commitment of sexually dangerous persons. See G.L. c. 123A, §§ 12-14 (detailing new commitment procedures); see also Commonwealth v. Bruno, 432 Mass. 489, 495-97 (2000) (detailing new commitment procedures). The Legislature also required the Department to submit a plan for the administration and management of the Treatment Center to the clerks of the House of Representatives and the Senate. See G.L. c. 123A, § 16. As the Supreme Judicial Court noted, the Treatment Center's superintendent "has promulgated rules and regulations regarding persons temporarily committed consistent with the management plan for the facility as a whole that comports with constitutional requirements as determined by the United State District Court." Bruno, 432 Mass. at 514 (citing King v. Greenblatt, 53 F. Supp.2d 117, 134-37 (D. Mass. 1999)). In particular, the regulations provide that persons temporarily committed shall be managed in a manner similar to management for the facility as a whole. Id. (holding that there was no showing

that Commissioner of Correction abused his discretion in holding those temporarily committed in accordance with these rules and regulations or that the manner and conditions under which those temporarily committed are held is unconstitutional). Thus, that Schmitt is currently a civil detainee pending the results of his civil commitment hearing does not exempt him from the rules and regulations at the Treatment Center.

 2. **Approval of the Discipline System for SDP's.**

 In the course of the consent decree litigation, the federal court reviewed the establishment of a disciplinary system for SDP's, codified at 103 CMR 431, <u>Observation of Behavior Reports</u> ("OBR Regulations"). <u>See</u> <u>King</u>, 53 F. Supp.2d at 127. The then clinical director of the Treatment Center drafted the disciplinary policy which included a list of defined offenses and corresponding sanctions. <u>Id.</u>

 Both this Court and the First Circuit Court of Appeals approved the OBR Regulations. <u>Id.</u> at 128; <u>King III</u>, 149 F.3d at 18. This Court found that the OBR Regulations "give[] adequate and fair warning of punishable offenses and their corresponding sanctions, and provide[] for notice and a hearing, where the resident has an opportunity to be heard." <u>King</u>, 53 F. Supp.2d at 128 (citation omitted). In particular, the First Circuit concluded that "the disciplinary system is responsive to both the 'treatment' need of residents to learn accountability for their actions and the administrative and security concerns of the institution. <u>King III</u>, 149 F.3d at 18. Importantly, the First Circuit "found no constitutional defects in the disciplinary procedures" set forth in the Amended Management Plan. <u>King</u>, 53 F. Supp.2d at 128.

 The OBR Regulations preclude residents from "[p]ossessing unauthorized sexually explicit

or offensive-related printed material or objects." 103 CMR 431.11, offense C-13. The term "sexually explicit" is not defined in the OBR Regulations. Contrast 103 CMR 481.06, Inmate Mail (defining "sexually explicit" as "[a] pictorial depiction of actual or simulated sexual acts including sexual intercourse, anal or oral sex, or masturbation or material which promotes itself based upon such depictions on a routine or regular basis or in individual one-time issues."). Furthermore, this prohibition is broader than that contained in 103 CMR 481.06.

The reason for the broader definition applicable to the Treatment Center is obvious. The Treatment Center is designed to treat sex offenders. General Laws c. 123A, § 2 vests the Commissioner of Correction with sole responsibility for the Treatment Center's operation. The statute requires the Commissioner to maintain a treatment center for "the care, custody, treatment and rehabilitation" of sexually dangerous persons. G.L. c. 123A, § 2.

There can be no doubt that states have a legitimate and compelling interest in rehabilitating sex offenders. "Sex offenders are a serious threat in this Nation." McKune v. Lile, 536 U.S. 24, 32 (2002). As the Supreme Court recently noted, when sex offenders reenter society, "they are much more likely than any other type of offender to be rearrested for a new rape or sexual assault." Id. at 33. "States thus have a vital interest in rehabilitating sex offenders." Id. Indeed, in a recent Massachusetts Superior Court decision, the court determined that the Treatment Center's prohibition of "possession of 'offensive pictures or literature' is reasonably related to legitimate penological interests." Morrissey v. Dennehy, Mem. of Decision and Order on Defs.' Mot. for J. on the Pleadings, Plymouth C.A. No. 05-0081B (May 4, 2006) (Rufo, J.) (attached hereto as Ex. A).

There can also be no doubt that the possession of unauthorized sexually graphic material (whether in written or pictorial form) inside the Treatment Center is harmful to rehabilitation goals and treatment and security needs of this unique facility. As noted above, the former clinical director of the sex offender treatment program developed the OBR Regulations, which prohibit the possession of such materials. It seems clear beyond the necessity for demonstration that sexually graphic materials may be used as a form of currency, incite anger and violence among the population and continue to feed the sexual deviance of those who come into contact with such material, all of which are contrary to the rehabilitation goals and treatment and security needs of the Treatment Center. (Murphy Aff., attached hereto as Ex. B.) Accordingly, Schmitt is prohibited from possessing the stories that were the subject of the litigation while he is housed at the Treatment Center.

## II.    SCHMITT IS NOT ENTITLED TO HAVE THE DISCIPLINE EXPUNGED FROM HIS PRISON DISCIPLINARY RECORD.

With regard to the expungement of the discipline from Schmitt's record, that issue was not before the jury, nor did Schmitt make any such request. Consequently, he may not raise the issue now, given that the cases are now closed, following a trial by jury. Furthermore, as discussed in defendants' supplement to their motion for summary judgment and motion for reconsideration, the statute of limitations on the certiorari claims expired prior to the filing of his complaints, and, thus, he is barred from raising any claims with regard to the expungement of the disciplinary records. Moreover, the request is also inappropriate because the issue is moot, as he is no longer an incarcerated inmate, but, rather, a civil detainee.

### III.    SCHMITT IS NOT ENTITLED TO ANY FURTHER DISCOVERY IN THIS MATTER.

With regard to his request that the Department provide a list of anyone who received a copy of the disciplinary reports/stories, this case is closed, and, thus, Schmitt is not entitled to any discovery on this or any other matter. Furthermore, the disciplinary reports and stories were attached as exhibits to defendants' motions, and, thus, are a public record available to anyone who wishes to request them through the Court.

### IV.    SCHMITT SHOULD BE MONETARILY SANCTIONED FOR HIS FAILURE TO COMPLY WITH THIS COURT'S ORDERS TO CEASE FILING DUPLICATIVE AND FRIVOLOUS MOTIONS AND ALL OF HIS FUTURE MOTIONS SHOULD BE DISMISSED SUA SPONTE WITH FURTHER SANCTIONS IMPOSED.

With regard to Schmitt's request that this Court have the stories removed from the Worcester Superior Court civil commitment proceeding, on no less than three prior occasions (04-10717 Doc. Nos. 47, 53, 64, orally at pre-trial conference), Schmitt has made the same request, and each time this Court has denied his request. Given Schmitt's failure to comply with this Court's March 30, 2005 Order, in which "Schmitt is ordered to cease filing the same motion more than once," and its March 1, 2006 Order, in which "Schmitt is warned that any subsequent duplicative motions will result in the dismissal of the action," defendants move that Schmitt be sanctioned no less than $100.00, thereby reducing the $302.00 judgment to $202.00, for defying this Court's Orders and continuing to waste the Court's and the Commonwealth's time and resources in responding to this duplicative and frivolous motion. The Defendants further move that all future motions which he files be denied sua sponte, with further monetary sanctions

imposed for his relentless filing of frivolous and meritless motions, which continue despite that these cases are closed.

## CONCLUSION

For the foregoing reasons, Schmitt's post-trial motion for court order should be denied, and he should be monetarily sanctioned for defying the Court's Orders and continuing to file the same frivolous motions. In addition, all future motions which he files in these closed matters should be denied sua sponte, with further monetary sanctions imposed against Schmitt as the Court sees fit for his relentless filing of frivolous and meritless motions.

Respectfully submitted,

NANCY ANKERS WHITE
Special Assistant Attorney General

DATED: May 10, 2006

C. Raye Poole

/s/ C. Raye Poole

B.B.O. # 632719
Department of Correction
Legal Division
70 Franklin Street, Suite 600
Boston, MA 02110
(617) 727-3300 ext. 147

Certificate of Service

I, C. Raye Poole, counsel for the defendants, hereby certify that on this 10th day of May 2006, I served a copy of the above motion by first class mail, postage prepaid, on the Schmitt, Joseph Schmitt, at his last known address, Massachusetts Treatment Center, 30 Administration Road, Bridgewater, Massachusetts 02324.

/s/ C. Raye Poole
C. Raye Poole

11

05/09/2006   19:28    5082798181              MTGLEGAL                    PAGE  02

# Commonwealth of Massachusetts
## County of Plymouth
## The Superior Court

(SEAL)

CIVIL DOCKET# PLCV2005-00081

John A Morrissey,
Plaintiff,

vs.

Kathleen Dennehy,
Robert Murphy, and John Wells,
Defendants.

## JUDGMENT

This action came on before the Court, Robert C. Rufo, Justice, presiding, upon the plaintiff's motion for summary judgment and the defendants' motion for judgment on the pleadings, and the court after hearing and upon consideration of the submissions, issued a Memorandum of Decision and Order allowing the defendants' motion, therefore,

It is ORDERED and ADJUDGED:

The complaint of the plaintiff, John A. Morrissey, be and hereby is DISMISSED against the defendants Kathleen Dennehy, Robert Murphy and John Wells, and the defendants shall have their costs of action.

Dated at Plymouth, Massachusetts this 8th day of May, 2006.

Francis R. Powers,
Clerk of the Courts

By:....................................

Assistant Clerk

Copies mailed 05/08/2006

cvdjudgen_1.wpd 311104 judge Bakersda

EXHIBIT

A

05/09/2006  19:20  5082790181              MTCLEGAL              PAGE  03

COMMONWEALTH OF MASSACHUSETTS

PLYMOUTH, ss.                          SUPERIOR COURT DEPARTMENT
                                       OF THE TRIAL COURT
(SEAL)                                 CIVIL ACTION: 05-0081B

JOHN A. MORRISSEY,
          Plaintiff

vs.

KATHLEEN DENNEHY, Commissioner
     of Correction
ROBERT MURPHY, Superintendent,
     Massachusetts Treatment Center
JOHN WELLS, Disciplinary Board Member,
     Massachusetts Treatment Center
          Defendants

## MEMORANDUM OF DECISION AND ORDER ON DEFENDANTS' MOTION FOR JUDGMENT ON THE PLEADINGS

After hearing and full review of the administrative record, the court finds the decision of the Defendants was not based on errors of law or unlawful procedure, was supported by substantial evidence and warranted by the facts found in the administrative record and rendered in accordance with agency regulations.

The Court finds that the Massachusetts Treatment Center ("MTC") followed all applicable procedures and regulations regarding the charges of unauthorized sexual contact and the unauthorized possession pornographic materials. Moreover, the subsequent disciplinary actions are supported by substantial evidence in the form of numerous sexually explicit letters and documents seized from the Plaintiff's cell and an admission detailed in a Disciplinary Report prepared by MTC Officer Robert Clauss on October 18, 2004. As to Plaintiff's remaining

MAY - 9

05/09/2006  19:28   5082790101          MTCLEGAL              PAGE  04

claims, the Court finds that Rule 20 contained in Appendix B to the Procedural Attachment to

103 DOC 400, which disallows possession of "offensive pictures or literature" is reasonably

related to legitimate penological interests. Mass. Prisoners P.A.C. v. The Acting Governor, 435

Mass. 811, 819 (2002) quoting Turner v. Safley, 482 U.S. 78, 89 (1987). Plaintiff received

sufficient notice of this rule in that it also appears as Rule 18 on page five of the Treatment

Center Inmate Orientation Handbook given to Plaintiff upon his admission to the MTC.

Accordingly, the Plaintiff's certiorari claims under G.L. c. 249 § 4, G.L. c. 231A, G.L. c. 214 § 1

and for damages pursuant of 42 U.S.C. §1983 are dismissed and the Court allows Defendants'

Motion for Judgment on the Pleadings.

Robert C. Rufo, Associate Justice

Date:  May 4, 2006

Copies mailed May 8, 2006

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

CIVIL ACTION NO. 04-10451-RWZ
CIVIL ACTION NO. 04-10717-RWZ

JOSEPH SCHMITT,
    Schmitt,

    v.

JEFFREY SMITH, et al.,
Defendants

AND

JOSEPH SCHMITT,
    Schmitt,

    v.

PATRICK MULVEY, et al.,
Defendants.

## AFFIDAVIT OF ROBERT MURPHY

I, Robert Murphy, hereby depose and say:

1.     I am the Superintendent at the Massachusetts Treatment Center ("Treatment Center") in Bridgewater, Massachusetts. I have held this position since November of 1997.

2.     The Treatment Center is a correctional facility housing approximately 620 males. All of the incarcerated individuals are sex offenders. They are either civilly committed for a day to life as sexually dangerous persons, awaiting a civil commitment hearing (or determination thereof) for sexual dangerousness, or serving a sentence for a sex crime.

3.     Joseph Schmitt is an inmate currently housed at the Treatment Center pending determination of his civil commitment hearing. He was transferred to the Treatment

EXHIBIT

B

2

Center on August 9, 2002, from MCI-Cedar Junction, a maximum security institution, having completed a four to eight year sentence for two counts of rape of a child.

4.    Everyone who is housed at the Treatment Center is prohibited from "[p]ossessing unauthorized sexually explicit or offensive-related printed material or objects." 103 CMR 431.11, offense C-13. This restriction includes the prohibition of all sexually explicit materials, as such materials are contrary to the rehabilitation goals and treatment and security needs of the Treatment Center. Such materials may be used as a form of currency, to incite anger and violence among the population, and to continue to feed the sexual deviance of those who come into contact with such material. The prohibition of possession of such materials is, therefore, reasonably related to legitimate penological interests.

5.    As a civil detainee at the Treatment Center, Schmitt is prohibited from possessing the stories that are the subject of this litigation, i.e., stories that describe sexual acts involving children.

I hereby certify on this 10th day of May 2006, under the penalty of perjury that the foregoing is true and correct.

Robert Murphy

Massachusetts Department of Correction

# MASTER PROPERTY INVENTORY FORM

Inmate Name:   JOSEPH SCHMITT          Commit #    M81137          Unit/Cell/Bed:     B2/019/B

## Appliances/Accessories

| Item | Current Quantity | Quantity Pending | Current Status | Condition | State Issued | Serial # | Seal# | Description |
|---|---|---|---|---|---|---|---|---|
| AM/FM radio | | 0 | Active | Working - Fair | No | | 257469 257470 | GE |
| **Total:** | **1** | **Total: 0** | | | | | | |
| Antenna | 1 | 0 | Active | Good | No | | | UHF |
| | 1 | 0 | Active | Working - Good | No | | | adaptor |
| **Total:** | **2** | **Total: 0** | | | | | | |
| Cable Splitter | 1 | 0 | Active | Working - Good | No | | | |
| **Total:** | **1** | **Total: 0** | | | | | | |
| Coax Cable | 1 | 0 | Active | Working - Fair | No | | | |
| **Total:** | **1** | **Total: 0** | | | | | | |
| Double Male Connector | 1 | 0 | Active | Working - Fair | No | | | |
| **Total:** | **1** | **Total: 0** | | | | | | |
| Extension Cord | 1 | 0 | Active | Fair | No | | | |
| **Total:** | **1** | **Total: 0** | | | | | | |
| Fan | 1 | 0 | Active | Working - Fair | No | | | lakewood |
| **Total:** | **1** | **Total: 0** | | | | | | |
| Headphones | 1 | 0 | Active | Working - Fair | No | | | Jensen |
| | 1 | 0 | Active | Working - Fair | No | | | sony |
| **Total:** | **2** | **Total: 0** | | | | | | |
| Mono Adapter | 1 | 0 | Active | Working - Good | No | | | |
| **Total:** | **1** | **Total: 0** | | | | | | |
| T.V. 13" | 1 | 0 | Active | Working - Fair | No | 30918553 | 257326 257327 | ktv color |
| **Total:** | **1** | **Total: 0** | | | | | | |
| Walkman | 1 | 0 | Active | Working - Fair | No | 20040916586 | 257739 | Jensen |
| **Total:** | **1** | **Total: 0** | | | | | | |

## Clothing

| Item | Current Quantity | Quantity Pending | Current Status | Condition | State Issued | Serial # | Seal# | Description |
|---|---|---|---|---|---|---|---|---|
| Coats | 1 | 0 | Active | Good | No | | | , court clothes |
| | 1 | 0 | Active | Good | Yes | | | winter |
| **Total:** | **2** | **Total: 0** | | | | | | |
| Footwear | 1 | 0 | Active | Fair | No | | | New balance |
| | 1 | 0 | Active | Good | No | | | Asics gel sneakers |
| | 1 | 0 | Active | Good | No | | | SHOWER |
| **Total:** | **3** | **Total: 0** | | | | | | |
| Hats | 1 | 0 | Active | Fair | No | | | baseball cap |
| | 1 | 0 | Active | Good | Yes | | | knit |
| **Total:** | **2** | **Total: 0** | | | | | | |
| Shirts | 1 | 0 | Active | Fair | No | | | |
| | 1 | 0 | Active | Fair | Yes | | | |
| | 1 | 0 | Active | Good | No | | | court clothes |
| | 1 | 0 | Active | Good | No | | | |

Massachusetts Department of Correction

# MASTER PROPERTY INVENTORY FORM

Inmate Name:  JOSEPH  SCHMITT          Commit #    M81137          Unit/Cell/Bed:    B2/019/B

## Clothing

| Item | | Current Quantity | | Quantity Pending | Current Status | Condition | State Issued | Serial # | Seal# | Description |
|---|---|---|---|---|---|---|---|---|---|---|
| Shirts | | 1 | | 0 | Active | Good | Yes | | | SCRUBS |
| | Total: | 5 | Total: | 0 | | | | | | |
| Socks | | 7 | | 0 | Active | Fair | No | | | |
| | | 4 | | 0 | Active | Good | No | | | court clothes |
| | Total: | 11 | Total: | 0 | | | | | | |
| Trousers | | 2 | | 0 | Active | Fair | No | | | Levi jeans blk |
| | | 1 | | 0 | Active | Fair | No | | | levi |
| | | 1 | | 0 | Active | Good | No | | | court clothes |
| | | 1 | | 0 | Active | Good | Yes | | | SCRUBS |
| | Total: | 5 | Total: | 0 | | | | | | |
| Undershirts/Bras | | 1 | | 0 | Active | Fair | No | | | |
| | | 5 | | 0 | Active | Good | No | | | |
| | Total: | 6 | Total: | 0 | | | | | | |
| Underwear | | 10 | | 0 | Active | Fair | No | | | |
| | | 3 | | 0 | Active | Good | No | | | court clothes |
| | Total: | 13 | Total: | 0 | | | | | | |

## Clothing - Restricted

| Item | Current Quantity | Quantity Pending | Current Status | Condition | State Issued | Serial # | Seal# | Description |
|---|---|---|---|---|---|---|---|---|
| Bath Robe | 1 | 0 | Active | Good | No | | | |
| Total: | 1 | Total:  0 | | | | | | |
| Belts/Buckles | 1 | 0 | Active | Good | No | | | court clothes |
| Total: | 1 | Total:  0 | | | | | | |
| Gym Shorts | 2 | 0 | Active | Fair | No | | | |
| Total: | 2 | Total:  0 | | | | | | |
| Sweatpants | 2 | 0 | Active | Fair | No | | | |
| Total: | 2 | Total:  0 | | | | | | |
| Sweatshirt | 2 | 0 | Active | Fair | No | | | |
| Total: | 2 | Total:  0 | | | | | | |

## Jewelry - Restricted

| Item | Current Quantity | Quantity Pending | Current Status | Condition | State Issued | Serial # | Seal# | Description |
|---|---|---|---|---|---|---|---|---|
| Watch | 1 | 0 | Active | Fair | No | | | |
| Total: | 1 | Total:  0 | | | | | | |

## Linen

| Item | Current Quantity | Quantity Pending | Current Status | Condition | State Issued | Serial # | Seal# | Description |
|---|---|---|---|---|---|---|---|---|
| Blanket | 1 | 0 | Active | Good | Yes | | | |
| Total: | 1 | Total:  0 | | | | | | |
| Mattress | 1 | 0 | Active | Good | Yes | | | |
| Total: | 1 | Total:  0 | | | | | | |
| Pillow Case | 1 | 0 | Active | Good | Yes | | | |
| | 1 | 0 | | | | | | |

# Massachusetts Department of Correction

# MASTER PROPERTY INVENTORY FORM

| Inmate Name: | JOSEPH SCHMITT | | | Commit # | M81137 | | Unit/Cell/Bed: | B2/019/B |
|---|---|---|---|---|---|---|---|---|

**Linen**

| Pillow Case | Total: | | Total: | | | | | |
|---|---|---|---|---|---|---|---|---|
| Pillow | | 1 | 0 | | Active | Good | Yes | |
| | Total: | 1 | Total: | 0 | | | | |
| Sheets | | 2 | 0 | | Active | Good | Yes | |
| | Total: | 2 | Total: | 0 | | | | |
| Towels | | 1 | 0 | | Active | Good | Yes | |
| | Total: | 1 | Total: | 0 | | | | |

**Medical Items**

| Item | Current Quantity | Quantity Pending | Current Status | Condition | State Issued | Serial # | Seal# | Description |
|---|---|---|---|---|---|---|---|---|
| Eyeglasses | 1 | 0 | Active | Good | No | | | EYE |
| Total: | 1 | Total: 0 | | | | | | |
| Sunglasses | 1 | 0 | Active | Good | No | | | |
| Total: | 1 | Total: 0 | | | | | | |

**Miscellaneous Items**

| Item | Current Quantity | Quantity Pending | Current Status | Condition | State Issued | Serial # | Seal# | Description |
|---|---|---|---|---|---|---|---|---|
| Books/Magazines/Newspapers | 9 | 0 | Active | Fair | No | | | |
| | 1 | 0 | Active | Good | No | | | not allowed. book |
| | 0 | 1 | Pending Disposal | | No | | | Nudist Mag. Containing Child Pornography |
| Total: | 10 | Total: 1 | | | | | | |
| Legal Documents | 1 | 0 | Active | Fair | No | | | 1 CF OR LESS |
| Total: | 1 | Total: 0 | | | | | | |
| Letters/Photos/Newsclippings | 1 | 0 | Active | Fair | No | | | 1 CF OR LESS |
| | 0 | 1 | Pending Disposal | Fair | No | | | package containing sexually explicit material. |
| Total: | 1 | Total: 1 | | | | | | |
| Pens/Pencils | 1 | 0 | Active | Fair | No | | | |
| Total: | 1 | Total: 0 | | | | | | |
| Stamps | 0 | 3 | Pending Disposal | | No | | | (3) Stamps .39 |
| Total: | 0 | Total: 3 | | | | | | |
| Toiletries | 1 | 0 | Active | Fair | No | | | 4 |
| Total: | 1 | Total: 0 | | | | | | |

**Miscellaneous Items - Restricted**

| Item | Current Quantity | Quantity Pending | Current Status | Condition | State Issued | Serial # | Seal# | Description |
|---|---|---|---|---|---|---|---|---|
| Bowl | 1 | 0 | Active | | No | | | |
| Total: | 1 | Total: 0 | | | | | | |
| Cup | 1 | 0 | Active | | No | | | |
| Total: | 1 | Total: 0 | | | | | | |
| Locks | 1 | 0 | Active | Good | No | | | |

Massachusetts Department of Correction

# MASTER PROPERTY INVENTORY FORM

| | | | | | |
|---|---|---|---|---|---|
| **Inmate Name:** | JOSEPH SCHMITT | **Commit #** | M81137 | **Unit/Cell/Bed:** | B2/019/B |

---

**Miscellaneous Items - Restricted**

| Item | Total: | | Total: | | | | |
|---|---|---|---|---|---|---|---|
| Locks | **Total:** | **1** | **Total:** | **0** | | | |
| Mirror | | 1 | 0 | Active | | No | |
| | **Total:** | **1** | **Total:** | **0** | | | |
| Nail Clipper | | 1 | 0 | Active | | No | n |
| | **Total:** | **1** | **Total:** | **0** | | | |
| Sewing Kit | | 1 | 0 | Active | | No | |
| | **Total:** | **1** | **Total:** | **0** | | | |
| Toe Nail Clipper (no file) | | 1 | 0 | Active | | No | |
| | **Total:** | **1** | **Total:** | **0** | | | |

**Other Items**

| Item | Current Quantity | Quantity Pending | Current Status | Condition | State Issued | Serial # | Seal# | Description |
|---|---|---|---|---|---|---|---|---|
| | 1 | 0 | Active | Fair | No | | | 1vhf ant |
| | 5 | 0 | Active | Good | No | | | corr. ribbons |
| | 10 | 0 | Active | Good | No | | | file folders |
| | 5 | 0 | Active | Good | No | | | typewriter ribbons |
| | 1 | 0 | Active | Working - Good | No | | | balum |
| | 1 | 0 | Active | Working - Good | No | | | correction ribbons |
| | 0 | 24 | Pending Disposal | | No | | | 25 Envelopes of Legal paper work - - not considered indigent mail by DOC. |
| | 0 | 1 | Pending Disposal | | No | | | 25 Envelopes of Legal paper work - - not considered indigent mail by DOC.  (15) Addressed to Elizabeth Brady, ESQ. (1) Barbara Schmitt. (1) Harry Schmitt, (1) Matthew Schmitt, (1) Joseph Schmitt, (1) Carl Schmitt, (1) Kara Schmitt, (1) David Minor, (1) Michaela Dohorey, (1) Zack Phillips, and (1) Schmitt, Dillon, & Smillie. ESQ. |
| | **Total:  23** | **Total:  25** | | | | | | |

| | |
|---|---|
| **Institution:** | MASS. TREATMENT CENTER |
| **Date:** | 20070323 |
| **Officer:** | Kara Morello-Quinn |

Massachusetts Department of Correction

# MASTER PROPERTY INVENTORY FORM

**Inmate Name:**   JOSEPH  SCHMITT              **Commit #**    M81137              **Unit/Cell/Bed:**      B2/019/B

**Institution:**    MASS. TREATMENT CENTER

**Officer:**        Kara  Morello-Quinn

**Inmate:**         _____